Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Facsimile: (801) 665-0128
Attorneys for Defendant
gskordas@schhlaw.com
gmena@schhlaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY RASH,<br><br>Defendant. | **DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS**<br><br>Case No. 0090 1:24-cr-00298-001<br><br>Honorable Judge Randolph D. Moss |

The Defendant, Zachary Rash, by and through counsel of record, Gregory G. Skordas, hereby submits this memorandum with respect to requested recommendations and sentencing pursuant to 18 U.S.C. §3553(a).

## REQUESTED SENTENCE

Count 1, Assaulting, Resisting, or Impeding Certain Officers, a Class D Felony pursuant to 18 U.S.C. §111(a)(1); it is respectfully requested Mr. Rash serve on the low end of the Sentencing Guideline range of 24 months of incarceration from the Plea Agreement.

## REQUESTED RECOMMENDATIONS

a. **Incarceration and Fine:**

    a. **Incarceration**. The Defendant requests that the Court consider the low end of

       the Sentencing Guideline range from the Plea Agreement. The Plea Agreement calculated Mr. Rash at a total offense level of 17 while the Presentence Investigation Report calculated a total offense level of 21. The four point difference stems from the Probation Office adding a four-level enhancement because a dangerous weapon was involved.

  b. **Fine/Ability to Pay**. The Defendant requests that the fine be waived, as he will need to allocate any extra funds towards the imposed restitution especially if he is sentenced to incarceration. Mr. Rash has limited positive monthly cash flow as he is the sole provider for his household.

## SENTENCING DISCUSSION

### I

### 18 U.S.C. § 3553(a) Factors

**Nature and Circumstances of the Offense:**

Mr. Rash acknowledges his crime is a very serious offense. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. A joint session of the United States Congress convened at the Capital. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election.

As the proceedings continued in both the House and the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

Shortly after 2:00 PM individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

In the days preceding January 6, 2021, Mr. Rash travelled from Utah to Washington D.C. to attend the former president's rally. Following the rally, Mr. Rash walked to the US Capitol, eventually arriving at the West Plaza. On the West Plaza, Mr. Rash approached a police line established by officers to prevent the developing mob from advancing on the Capitol.

At approximately 2:28 PM, the police line on the West Plaza collapsed after rioters successfully overcame officers, forcing officers to retreat to the Capitol. After this breach, Mr. Rash, carrying a fire extinguisher, moved to the Lower West Terrace as an initial rioter to overtake this location.

Mr. Rash moved toward the Inauguration Tunnel Entrance ("Tunnel") on the Lower West Terrace. Mr. Rash initially entered the Tunnel at approximately 2:50 PM and immediately moved to the front of the mob where rioters assaulted law enforcement. For the next few minutes, Mr. Rash moved to different locations inside the Tunnel and, at one point, waived to

other rioters on the Lower West Terrace to join the chaotic scene around him.

At approximately 2:53 PM, defendant Bryan Smith removed a stun gun from his pocket and tested the stun gun to ensure it worked. This rioter held and spark tested the stun gun while Mr. Rash stood several feet to his right. After defendant Smith ensured the stun gun worked properly, defendant Smith waived the stun gun and offered it to other rioters in front of him. Mr. Rash reached for the stun gun and took it from the rioter. Mr. Rash at some point after receiving the stun gun lunged toward officers and activated the stun gun several times.

**Acceptance of Responsibility:**

Mr. Rash has accepted responsibility for the offense. Mr. Rash has also agreed to allow law enforcement agents to review any social media accounts operated by him for statements and postings in and around January 6, 2021, and conduct an interview with Mr. Rash regarding the events in and around January 6, 2021, prior to sentencing.

**Need for the Sentence Imposed:**

The requested sentence reflects both the need for the imposition of a substantial sentence and a resolution with the imposition that is not greater than necessary to achieve the objectives of sentencing.

**Protect the Public from Further Crimes of the Defendant:**

If Mr. Rash is sentenced to the lower end of the guideline range from the Plea Agreement, he will be better able to pay restitution. Mr. Rash has a better chance of being successful if incarcerated for the least amount of time possible and it will adequately protect the community.

Based on the foregoing, Mr. Rash requests that the Court sentence him to the lowest possible range from the Plea Agreement Estimated Sentencing Guidelines. Given Mr. Rash's

individual characteristics, such a sentence strikes an appropriate balance between general and specific deterrence concerns and need for rehabilitation.

DATED this 11th day of November 2024.

                              SKORDAS & CASTON, LLC

                              */s/ Gregory G. Skordas*
                              Gregory G. Skordas

## CERTIFICATE OF SERVICE

I hereby certify that on the 11 November 2024, I electronically filed a true and correct copy of the foregoing **DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS**, with the Clerk of the Court using CM/ECF system, which sent notification of such filing to the following:

Eli J. Ross
Assistant United States Attorney
Illinois Bar Number 6321411
U.S. Attorney's Office for the District of Columbia
601 D Street, NW Washington, D.C. 20001
(202) 297-1515
Eli.Ross@usdoj.gov

                                             */s/Lauren Norene-Legal Assistant*
                                             SKORDAS & CASTON, LLC